1  Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
2  Joseph S. Hoff (SBN 283856) *jh@mckennonlawgroup.com*
   Cory T. Salisbury (SBN 282077) *cs@mckennonlawgroup.com*
3  **McKENNON LAW GROUP PC**
   20321 SW Birch Street, Suite 200
   Newport Beach, California 92660
4  Phone:  949-387-9595  |  Fax:  949-385-5165

5  Attorneys for Plaintiff Isabella Luna

6

7

8                  **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ISABELLA LUNA,                          Case No.:  **'22 CV 1768 BEN BGS**

12                                          Action Filed:
                  Plaintiff,
13                                          Trial Date: None
    vs.
14                                          ─────────────────────────────
    SECURIAN LIFE INSURANCE
15  COMPANY; MV                             COMPLAINT FOR RECOVERY OF
    TRANSPORTATION, INC.; and              ERISA PLAN BENEFITS;
16  DOES 1 through 10, inclusive,           ENFORCEMENT AND
                                            CLARIFICATION OF RIGHTS;
17                Defendants.               BREACH OF FIDUCIARY DUTY;
                                            PREJUDGMENT INTEREST AND
18  ─────────────────────────────          ATTORNEYS' FEES

19

20                                          [Filed Concurrently With:
                                               -  Certification and Notice of Interested
21                                                 Parties; and
                                               -  Civil Case Cover Sheet]
22

23

24

25

26

27

28

## **NATURE OF ACTION**

1.     This case presents a dispute concerning a $50,000 supplemental employee group life insurance policy number 70311 ("Policy") purchased by the decedent, Mark Luna ("Mr. Luna"), for the benefit of his daughter, Plaintiff Isabella Luna ("Plaintiff"), through an employee welfare benefit plan (the "Plan") offered by his employer, Defendant MV Transportation, Inc. ("MV Transportation"). When Mr. Luna tragically died on January 29, 2022, the insurance company that issued the Policy for the benefit of MV Transportation's employees – Defendant Securian Insurance Company ( "Securian") (Securian and MV Transportation are collectively referred to as "Defendants") – refused to pay any death benefits because Mr. Luna had not yet provided "evidence of insurability" (i.e., information regarding his health) that was supposedly required to purchase the $50,000 in supplemental life insurance coverage.

2.     Securian has persisted in refusing to honor Plaintiff's claim, even though Mr. Luna completed all of the forms provided to him by his employer when he applied for the life insurance coverage. Securian issued him Benefit Summaries indicating that he was covered for supplemental life insurance under the Policy in the amount of $50,000 and he paid twice-monthly premiums on the Policy for several months, which were billed and collected by Securian until Mr. Luna died from complications due to diabetes in January 2022. MV Transportation deducted these premiums from Mr. Luna's paycheck and forwarded them to Securian, who accepted the payments without objection twice per month, month after month. Securian said nothing about the allegedly missing health information until Plaintiff filed a claim for benefits. As alleged above, months before Plaintiff's claim, Securian had issued to Mr. Luna and Plaintiff Benefit Summaries evidencing that Mr. Luna was covered for $50,000 in supplemental life insurance coverage under the Policy, inducing Mr. Luna and Plaintiff to reasonably believe and detrimentally

Case No.:

rely on Defendants' representations that Mr. Luna was in fact covered for that amount should he die.

3. Plaintiff brings this action to receive life insurance benefits and to enforce and clarify her rights under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B). Alternatively, Plaintiff asserts that Defendants breached their fiduciary duties to her that were owed under ERISA, and she therefore seeks equitable relief from this Court under ERISA Section 502(a)(3)(B), 29 U.S.C. Section 1132(a)(3)(B), including without limitation, equitable claims for waiver, reformation, estoppel and surcharge ("make-whole relief").

## THE PARTIES

4. Plaintiff is an individual who, at all times relevant to this action, was a citizen of the United States and a resident of the State of California, residing in Fallbrook, California, in the County of San Diego. At all times relevant to this action, Plaintiff was a beneficiary, as defined by ERISA Section 3(8), 29 U.S.C. Section 1002(8), of the employee welfare benefit plan established by MV Transportation (the former employer of her recently deceased father, Mr. Luna), which plan is at issue in this action.

5. Securian is, and at all times relevant was, a Minnesota corporation with its principal place of business in Minnesota, duly authorized to do, and doing, business within the Judicial District of the Southern District Court of California, namely, issuing group life insurance policies to employers therein, including MV Transportation. Securian is, and at all times relevant was, an ERISA plan fiduciary. Securian funded the Plan and administered benefits provided to MV Transportation employees and their beneficiaries, including Plaintiff, by issuing the Policy to MV Transportation and through the Policy, insuring employees of MV Transportation for life insurance. Securian acted as the claims administrator for Plaintiff's life

Case No.:



insurance claim and generally for life insurance claims made under its Policy and the Plan.  And it acted as a plan administrator in connection with its Policy.

6.     MV Transportation is, and at all times relevant was, a California corporation with its principal place of business in Texas, duly authorized to do, and doing, business within the Judicial District of the Southern District Court of California, namely, offering membership in its employee welfare benefit plan therein.

7.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues DOES 1 through 10 by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of DOES 1 through 10 when the same are ascertained; DOES 1 through 10 are sued as principals and/or agents, servants, attorneys or employees of such principals, and all of the acts performed by them were within the course and scope of their authority and employment.  Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 10 is legally respon-sible in some manner for the events and happenings referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section 1132(e) and (f) and 28 U.S.C. Section 1331.

9.     Venue lies in the Southern District of California, pursuant to ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because Plaintiff resides in this district, some of the alleged breaches occurred in this district and the ERISA-governed plan at issue was administered in part in this district.  Venue is also proper pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this district.

Case No.:



## **FACTUAL BACKGROUND**

10.     Mr. Luna began working for MV Transportation on July 20, 2020 at an annual salary of $38,418 and enrolled in the Plan, which was offered by MV Transportation.  He elected Basic Life Coverage of $10,000 and his original coverage effective date was October 1, 2020.  He subsequently enrolled in Supplemental Employee Life Coverage for $50,000 which became effective on or about July 1, 2021.  The cost of the Supplemental Employee Life Coverage was $20.20 per paycheck.  This premium was withheld from Luna's paychecks from June 11, 2021 through February 4, 2022.

11.     The relevant provisions of the Policy are as follows:

Who is eligible for insurance?

You are eligible if you:

(1) Are a member of the eligible group and of an eligible class as shown on the specifications page; and
(2) Work for the employer for at least the number of hours per week shown as the minimum hours per week requirement on the specifications page; and
(3) Have satisfied the waiting period as shown on the specifications page; and
(4) Meet the actively at work requirement as shown in the section entitled "What is the actively at work requirement?"

What is the actively at work requirement?

To be eligible to become insured or to receive an increase in the amount of insurance, you must be actively at work, fully performing your customary duties for your regularly scheduled number of hours at the employer's normal place of business, or at other places the employer's business requires you to travel.

If you are not working due to illness or injury you do not meet the actively at work requirement.  If you are receiving sick pay, short-term disability benefits or long-term disability benefits, you do not meet the actively at work requirement.

If you are not actively at work on the date coverage would otherwise begin, or on the date an increase in your amount of insurance would otherwise be effective, you will not be eligible for the coverage or increase until you return to active work.  However, if the absence is on a non-work day, coverage will not be delayed provided you were actively at work on the work day immediately preceding the non-work day.

Except as otherwise provided for in this certificate, you are eligible to continue to be insured only while you remain actively at work.

Case No.:



Any insurance or increase in insurance which is elected or put in force while you are not actively at work will not be eligible for claim payment. You will receive a refund of premium for any contributory insurance for which you were not eligible.

When will we require evidence of insurability?

The specifications page describes when evidence of insurability is required.

When does insurance become effective?

Insurance becomes effective on the date that all of the following conditions have been met:

(1) You meet all eligibility requirements; and

(2) For contributory insurance, you apply for the insurance in accordance with the application methods agreed upon by the policyholder and us; and

(3) We are satisfied with your evidence of insurability, if we require evidence.

Can your coverage be continued during sickness, injury, leave of absence or temporary layoff?

Yes. Insurance may be continued on an insured employee who is not actively at work due to sickness, injury, leave of absence or temporary layoff, subject to the employer's practices and procedures, including the employer's limits on the length of continuation allowed for the type of absence. Continuation is contingent upon continued premium payment and is subject to the following maximum time frames:

(1) If you are on non-medical leave of absence or temporary layoff, insurance cannot be continued beyond 12 months from the last day you were actively at work. If you are on a strike, lockout or other general work stoppage caused by a labor dispute, your coverage cannot be continued beyond 6 months from the last day you were actively at work. Premiums for employees who are out due to strike are 120% higher than the rate paid as an actively working employee and must be paid by you for both basic and supplemental coverages according to the employer's practices and procedures.

(2) If you are on a medical leave of absence, insurance cannot be continued beyond the date you were terminated from employment.

Coverage during a leave of absence and upon return from a leave of absence shall meet all state and federal requirements. The above limits will be expanded if necessary in order to meet such requirements.

EVIDENCE OF INSURABILITY: Evidence of insurability satisfactory to us will be required:

. . . .



> At Qualified Status Change or annual open enrollment, a request that exceeds the amounts indicated below as not requiring evidence of insurability . . . .
>
> ANNUAL OPEN ENROLLMENTS: **During the employer's annual open enrollment, the following election changes can be made without providing evidence of insurability**:
>
> > **Currently enrolled employees** may increase their supplemental coverage by one level as long as the resulting amounts do not exceed the lesser of two times annual earnings or $150,000 for classes 1, 2 and 3 and $100,000 for classes 4, 4a, 4b, 4c, 5, 5a, 5b, 5d and 5e . . . .   (Emphasis added).

12.     The Policy defines Evidence of Insurability as "Evidence satisfactory to us of the good health of the prospective insured and any other underwriting information we require."

13.     On October 1, 2020, Mr. Luna went on a leave of absence.

14.     On November 21, 2020, Mr. Luna, who was then a "[c]urrently enrolled employee[]," submitted an application for supplemental life insurance in the amount of $50,000 through the Plan.

15.     Securian sent Mr. Luna a letter dated November 21, 2020, which provided access to an online portal "If you still need to complete your Evidence of Insurability or if you want to check the status of your submission."  Mr. Luna did not submit Evidence of Insurability at this time because he was not asked to do so.

16.     Beginning on June 11, 2021, $20.20 was deducted from each of Mr. Luna's paychecks as the premium payments for his supplemental life insurance coverage.  These premiums were deducted twice per month through February 4, 2022.

17.     A "Benefit Summary" generated on November 22, 2021 indicates that for "Supplemental Employee Life – Supplemental Life Non-Exempt," Mr. Luna elected coverage of $50,000, and *there was an actual coverage amount of $50,000*, with Plaintiff as beneficiary.  By contrast, the section related to short-term disability, "STD – Chubb Disability Income – 14 Day Plan," states "Pending Proof of Insurability" under the heading "Elected Coverage Amount."

Case No.:





18.     Plaintiff returned to work in April 2021.   On January 18, 2022, Mr. Luna took a final leave of absence.  He passed away a few days later on January 29, 2022.

19.     On February 7, 2022, Securian emailed MV Transportation, inquiring about Mr. Luna's coverage.  The email stated: "it appears [that Mr. Luna's] Supplemental Life coverage shows an effective date of 6/1/2021.  As part of our review of the claim, we located an EOI record for him that was declined for $50,000 with an effective date for 1/1/2021. [ ] Can you verify if 6/1/2021 is an accurate effective date?  If it is, can you clarify how he was able to elect coverage on this date since it is outside of Annual Enrollment?"

20.     On February 8, 2022, MV Transportation sent an email to Securian, stating that Mr. Luna "was on personal leave of absence and therefore not eligible to participate in Open Enrollment. Upon his return, an enrollment window was opened for him to elect benefits.  Due to system issues, his enrollment window was not opened until May for 6/1/22 effective benefits."

21.     On February 9, 2022, Securian sent an email to MV Transportation that stated:

> It appears Mr. Luna was electing Supplemental Life coverage for the **first** time upon returning to an actively at work status.  There was an amendment made to the Annual Open Enrollments effective 8/1/2020 where the opportunity for employees who were NOT currently enrolled was removed.  You indicated he was on a personal leave, can you confirm what date he began that leave? [ ]  If it was prior to 8/1/2020, I will need to check with our Contracts area to determine if he would still be eligible.  But if he went on leave after 8/1/2020, he would not have been eligible at any Open Enrollment after 8/1/2020 due to the amendment and removal of allowing employees NOT currently enrolled from electing coverage. (Emphasis in original.)

The email also quoted the Policy amendment referred to in the email and states that the amended language (per the amendment effective August 1, 2020) as follows:

> ANNUAL OPEN ENROLLMENTS:  During the employer's annual open enrollment, the following election changes can be made without providing evidence of insurability:

-7-

> Currently enrolled employees may increase their supplemental coverage by one level as long as the resulting amounts do not exceed the lesser of two times annual earnings or $150,000 for classes 1, 2 and 3 and $100,000 for classes 4, 4a, 4b, 4c, 5, 5a, 5b, 5d and 5e.

The email further quoted that pre-amendment language as follows:

> ANNUAL OPEN ENROLLMENTS:  During the employer's annual open enrollment, the following election changes can be made without providing evidence of insurability:
>
> > Currently enrolled employees may increase their supplemental coverage by one level as long as the resulting amounts do not exceed the lesser of two times annual earnings or $150,000 for classes 1, 2 and 3 and $100,000 for classes 4, 4a, 4b, 4c, 5, 5a, 5b, 5d and 5e.
> > ***Employees not currently participating are eligible to elect coverage up to the lesser of one times annual earnings or $100,000 for classes 1, 2 and 3 or $50,000 for classes 4, 4a, 4b, 4c, 5, 5a, 5b and 5d***.  (Emphasis added.)

22.     A Benefits Summary generated on February 22, 2022 states for "Supplemental Employee Life Election – Supplemental Life Non-Exempt" that Mr. Luna was covered for $50,000 in supplemental life insurance with an effective date of June 1, 2021.  The "Coverage Amount," the "Elected Coverage Amount" and "Actual Coverage Amount" were all listed as $50,000.  Under "Covered," it says "Yes."

23.     Securian sent Plaintiff a letter dated February 22, 2022 informing her that she was a beneficiary of Mr. Luna's life insurance policy.

24.     Securian generated a note on that same date, which states: "It appears the insured elected $50,000 supp life in error.  He was on leave and policy was amended immediately prior to leave.  He also has a declined EOI record."

25.     A note in Securian's claim file from March 3, 2022 states:

> The insured enrolled in benefits during an Annual Enrollment opportunity; however, he should not have been allowed to enroll.  He went on leave 10/1/2020 and elected coverage 6/1/2021 for an annual enrollment; however, the annual enrollment opportunity language in the policy at this time specifies that only employees currently enrolled could increase Supplemental Coverage by 1 level.  The PH confirmed the insured was not previously enrolled prior to 6/1/2021. [ ] Additionally, the insured has a declined EOI record.  Request to enroll in $50,000 of Supp Life was declined 11/23/2020 (coverage to be effective 1/1/2021).  There is also a previously declined provision in the policy for annual enrollment.  Since he was previously declined prior to

Case No.:



1   the coverage election date of 6/1/2021, he still would not have been
    eligible. [ ] We have complied with the PH the total amount of
2   premiums paid on the coverage given in error from 6/1/2021 to
    1/29/2022 totals $343.40.  We will be issuing a refund of premiums and
3   explaining the coverage enrollment given in error to the beneficiary.

4   26.    On March 4, 2022, Plaintiff made a claim for benefits as the

5   beneficiary under the basic life policy and under the Policy.  On March 11, 2022,

6   Securian paid Plaintiff death benefits of $10,000 on the basic life policy.

7   27.    Securian sent Ms. Luna a denial letter dated March 13, 2022 relating

8   the Plaintiff's claim under the Policy, which stated that Mr. Luna had taken a leave

9   of absence on October 1, 2020 and further stating:

10          Only employees currently enrolled could increase Supplemental
           Coverage by one level.  According to the information we received from
11          MV Transportation, he was not previously enrolled prior to 6/1/2021.
           Additionally, our records show Mr. Luna completed an Evidence of
12          Insurability application requesting to enroll in $50,000 of Supplemental
           Life coverage.  His application was declined on 11/23/2020.  The result
13          of this previously declined record would have also prevented him from
           participating in any Annual Enrollment opportunity after 11/23/2020
14          based on the policy language detailed above.

15

16   28.    Securian sent another letter to Plaintiff, dated March 15, 2022, stating

17   that benefits of $10,000 had been paid pursuant to the policy.  It also stated that

18   during Securian's review, "it was found that [Mr. Luna] erroneously enrolled in

19   [supplemental life] coverage during an Annual Enrollment opportunity on

20   6/1/2021."  The letter further stated:

21          [R]ecords show Mr. Luna went on leave 10/1/2020 and elected
           coverage on 6/1/2021 for an annual enrollment; however, due to the
22          policy language outlined above, only employees currently enrolled
           could increase Supplemental Coverage by one level.  According to the
23          information we received from MV Transportation, he was not
           previously enrolled prior to 6/1/2021. [ ] Additionally, our records show
24          Mr. Luna completed an Evidence of Insurability application requesting
           to enroll in $50,000 of Supplemental Life coverage.  His application
25          was declined on 11/23/2020.  The result of this previously declined
           record would have also prevented him from participating in any Annual
26          Enrollment opportunity after 11/23/2020. [ ] As a result, we will be
           issuing you under separate cover a check in the amount of $343.40
27          representing a refund of the premiums paid on the Supplemental Life
           coverage that Mr. Luna should not have been allowed to receive from
28          6/1/2021 through his date of passing.

-9-                                                    Case No.:



29. Regardless of the standard of review that this Court applies, Securian reached an incorrect benefit decision by refusing to pay Plaintiff's claim for supplemental life insurance under the Policy in the amount of $50,000.

30. Plaintiff has exhausted her administrative remedies under the Plan and has the right to bring a legal action for benefits and equitable relief under ERISA Section 502(a).

### FIRST CLAIM FOR RELIEF

To Receive Benefits, Attorneys' Fees and Pre-Judgment Interest

under an ERISA Plan – 29 U.S.C. Sections 1132(a)(1)(B), (g)(1)

(Plaintiff against Securian and Does 1 through 10)

31. Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein

32. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), permits plan beneficiaries like Plaintiff to bring a civil action to acquire benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

33. At all times relevant, Plaintiff has been entitled to supplemental life insurance benefits under the Plan in the amount of $50,000, as her father's (Mr. Luna's) designated beneficiary, following his death. By denying Plaintiff's claim for unpaid supplemental life insurance benefits in the amount of $50,000, and by related acts and omissions, Securian violated, and continues to violate, the terms of the Plan, and Plaintiff's rights thereunder.

34. Securian has failed to follow claims processing requirements of ERISA and of the Department of Labor Regulations and has failed to conduct a "full and fair review" of the claim denial, as required by 29 U.S.C. Section 1133(2).

35. California Insurance Code section 10110.6 applies to this case and provides that discretionary clauses in life insurance plans are barred. To the extent that the Policy contains discretionary review language, it is barred under California



1   law.  Therefore, the Court must review this case under the de novo standard of

2   review.

3       36.    Even if the Plan vests discretion in Securian to make benefit

4   determinations, no deference is warranted with regard to Securian's handling of this

5   claim.  *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir.

6   1997); *Jebian v. Hewlett-Packard Company Employee Benefits Organization*

7   *Income Protection Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are

8   not in compliance with regulatory and plan procedures, deference may not be

9   warranted.").

10      37.    Plaintiff is informed and believes, and on that basis alleges, that

11  Securian is both a funding source and claims fiduciary of the Plan, and thus has a

12  structural conflict of interest.  Therefore, even assuming that the Plan vests any

13  discretion in Securian to make benefit determinations, review of such

14  determinations by this Court must take into consideration all of the relevant facts

15  and circumstances in determining whether there is an abuse of discretion.

16      38.    A "prudent person" standard is imposed on ERISA fiduciaries.  *See* 29

17  U.S.C. § 1104(a)(1)(b).  A "fiduciary" is also under a duty of loyalty and care to the

18  participants and beneficiaries of the Plan.  *See* 29 U.S.C. § 1104(a)(1).  Under

19  ERISA: (1) a fiduciary must perform its duties solely in the interest of plan

20  participants and beneficiaries and for the exclusive purpose of providing plan

21  benefits to them; (2) a fiduciary must act with care, skill, prudence and diligence;

22  and (3) a fiduciary may not act in any capacity involving the plan, on behalf of a

23  party whose interests are adverse to the interests of the plan, its participants or its

24  beneficiaries.  Securian's handling of Plaintiff's claim falls far short of these

25  standards.

26      39.    For all of the reasons set forth above, the decision to deny supplemental

27  life insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational,

28  incorrect, contrary to the evidence, contrary to the terms of the Plan and contrary to

Case No.:



law.  Securian improperly denied this claim, as the evidence shows that its denial decision was not only incorrect, but arbitrary and capricious.  Further, Securian's denial decision and related actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006), and *Metropolitan Life Insurance Co. v. Glenn*, 544 U.S. 105 (2008).  Securian's denial of Plaintiff's claim was incorrect, improper and an abuse of discretion in light of all of the evidence discussed herein.

40.     Alternatively, based upon all of the evidence discussed above, Plaintiff has met the burden of establishing on a de novo review that she is entitled to unpaid supplemental life insurance benefits under the Plan/Policy in the amount of $50,000 and that Securian's denial of Plaintiff's claim was incorrect and improper.

41.     As described above, Defendant Securian relied on the Policy language in the ANNUAL OPEN ENROLLMENTS section of the Policy to deny Plaintiff's claim.  Specifically, it interpreted the following language to mean that Mr. Luna had to be then currently enrolled in a supplemental life insurance program of the Plan in order to increase his life insurance coverage by $50,000 pursuant to the Policy:

> ANNUAL OPEN ENROLLMENTS:  During the employer's annual open enrollment, the following election changes can be made without providing evidence of insurability:
>> Currently enrolled employees may increase their supplemental coverage by one level as long as the resulting amounts do not exceed the lesser of two times annual earnings or $150,000 for classes 1, 2 and 3 and $100,000 for classes 4, 4a, 4b, 4c, 5, 5a, 5b, 5d and 5e.

42.     Securian's interpretation of the Policy language above was erroneous in that the definition of the phrase "Currently enrolled employees" should have been interpreted to mean "Currently enrolled employees" in the Plan, not just employees who were already covered under the supplemental life insurance program of the Plan.  If Securian had given the Policy language this interpretation, it would have determined that he was properly covered under the Policy and that he was entitled to the $50,000 death benefit.  At a minimum, this Policy language, together with the



waiver provisions related to "evidence of insurability" and other Plan provisions are misleading and confusing and create an ambiguity in the Plan.  Under a de novo review standard, a court must construe ambiguities in an ERISA plan against the drafter and in favor of the reasonable expectations of the insured/plan participant. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995); *Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995); and *Gaines v. Sargent Fletcher, Inc. Group Life Ins. Plan,* 329 F.Supp.2d 1198, 1216-17 (C.D. Cal. 2004).

43.     Further, an insurer/claims administrator wishing to avoid liability on a policy must make exclusionary and other limiting clauses conspicuous, plain and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.  *See Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 386-87 (9th Cir. 1994); *cf. Kunin v. Benefit Trust Life Ins. Co*., 910 F.2d 534, 540 (9th Cir. 1990) (state-law principle of *contra proferentum* applies to the federal courts' interpretation of ERISA insurance contracts; in the context of interpreting ambiguous provisions, "the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand").  In general, courts will protect the reasonable expectations of applicants, insureds and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.  *Saltarelli*, *supra* at 386 ("Protecting the reasonable expectations of insureds appropriately serves the federal policies underlying ERISA, including provision of adequate information to plan participants and protection of their interests.")[1]

---

[1] ERISA's statutory declaration of policy, 29 U.S.C. Section 1001(a), states that "owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries . . . that disclosure be made and safeguards be provided with respect to the

Footnote continues on next page…

Case No.:



44.     Thus, under the ambiguous Plan language and given Defendants' conduct, Mr. Luna was not required to submit "evidence of insurability" or have Securian approve evidence of insurability in order to secure $50,000 in supplemental life insurance benefits, contrary to Securian's benefits decision.  Mr. Luna did in fact enroll in, pay for and secure supplemental life insurance under the Policy and the Plan in the amount of $50,000.  Securian has not paid any of this amount to Plaintiff.  As a direct and proximate result of Securian's erroneous denial of Plaintiff's supplemental life insurance benefits, Plaintiff has been deprived of these benefits since January 29, 2022.

45.     As a direct and proximate result of Securian's denial of benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

46.     A controversy now exists between the parties as to whether Plaintiff is entitled to the supplemental life insurance benefits as defined in the Plan.  Plaintiff seeks a declaration of this Court that (1) the decedent, Mr. Luna, properly enrolled as an insured and Plan participant under the Plan for $50,000 in supplemental life insurance and was not required to provide "evidence of insurability" or any other type of proof of good health under the ambiguous Plan language; and (2) Plaintiff is therefore entitled to supplemental life benefits in the unpaid amount of $50,000 as his designated beneficiary.  In the alternative, Plaintiff seeks a remand to the claims administrator for a determination of Plaintiff's claim that is consistent with the terms of the Plan

---

establishment, operation, and administration of such plans." It continues:

> It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).

Case No.:



47.     Plaintiff alleges all of the same conduct against Defendants Does 1 through 10 as she does against Defendant Securian in this First Claim for Relief and in this Complaint.

## SECOND CLAIM FOR RELIEF

Breach of Fiduciary Duty and for Equitable Relief Including Waiver, Reformation, Estoppel and Surcharge, and for Attorneys' Fees, Pre-Judgment Interest, under an ERISA Plan – 29 U.S.C. Sections 1132(a)(3)(B), (g)(1)

(Plaintiff against Securian, MV Transportation and Does 1 through 10)

48.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

49.     Plaintiff asserts this Second Claim for Relief, seeking equitable relief in the alternative to her First Claim for Relief (which seeks the payment of Plan benefits).  This is permitted under *Moyle v. Liberty Mutual Retirement Benefit Plan*, No. 13-56330, 2016 WL 2946271, at *11, 14 (9th Cir. May 20, 2016) (holding that ERISA claimants "may pursue simultaneous claims under 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3)" in the alternative).

50.     ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3)(B) permits a plan participant or beneficiary like Plaintiff to bring a civil action against a fiduciary like Defendant Securian to obtain "other appropriate equitable relief," including the equitable remedies of waiver, reformation, estoppel and "surcharge" (i.e., make-whole relief), in order to redress the fiduciary's violations of ERISA or an ERISA plan.

51.     At all times relevant herein, a fiduciary relationship existed between Plaintiff and Defendants, as well as between the decedent, Mr. Luna, and Defendants, who are ERISA plan fiduciaries.  Securian funded the MV Transportation employee welfare benefit Plan and administered benefits provided to MV Transportation employees and their beneficiaries, including Plaintiff, by issuing the group life insurance policy that insured MV Transportation's employees,



including Mr. Luna, for life insurance.  Securian acted as the claims administrator and named fiduciary for the Plaintiff's supplemental life insurance claim and generally for life insurance claims made under the Policy and the Plan.  Securian has and at all times relevant had the authority to grant or deny claims, including Plaintiff's claim for supplemental life insurance benefits.  The Policy states that Securian has "the exclusive right and authority, in its sole discretion, to interpret the group policy and decide all matters arising thereunder.  [Securian's] exercise of that authority shall be conclusive and binding on all persons unless it can be shown that the determination was arbitrary and capricious."  MV Transportation acted as the Plan administrator in connection with the Plan and is a named fiduciary.  Thus, Securian and MV Transportation acted as the Plan fiduciaries in connection with the Plan.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) ("When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii).")  *See also* 29 U.S.C. § 1002(21)(A)(i), (iii) ("a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan").

52.    Defendants had a fiduciary duty to properly advise Plaintiff and Mr. Luna on the Policy's enrollment requirements, his eligibility for certain levels of coverage and what information he would need to submit to secure that level of coverage and benefits available under the Plan.  They had a fiduciary duty to not mislead Mr. Luna and Plaintiff concerning the Plan's coverage, enrollment requirements, terms and conditions.  As part of these fiduciary duties in connection with the Policy's eligibility requirements and the evidence required to enroll in a certain amount of life insurance, Defendants had a duty to notify Mr. Luna and



Plaintiff when they knew that a Plan participant had not met a Plan requirement to secure the amount of life insurance for which he had applied.  They also had a fiduciary duty to participants and beneficiaries to ensure that a Plan participant properly completes the Plan's enrollment requirements and to effectively communicate those requirements to them in an understandable way.

53.   Defendants, as Plan fiduciaries, further owed Mr. Luna and Plaintiff a duty of utmost loyalty and care to serve, in good faith, in a manner that was in the best interests of Mr. Luna and Plaintiff, as a Plan participant and his designated beneficiary, respectively.  They owed to Mr. Luna and Plaintiff a duty to administer the Plan solely in the interest of Mr. Luna and Plaintiff, not their own interest.  They also owed a duty to disclose material facts concerning the Plan, to accurately provide information and advice to Mr. Luna and Plaintiff and to not mislead them regarding material information about benefits or Plan terms so that they could make appropriate decisions about their coverage under the Plan.

54.   Defendants owed a fiduciary duty to affirmatively provide information about benefits that they knew or should have known would be harmful to withhold based on its knowledge of the situation of the specific participant, Mr. Luna.  *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995).  This included "an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits."  *Id.*  This also included a fiduciary "obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information."  *Id.*  Finally, it included a duty to investigate suspicions that they had and alert the Plan participants and beneficiaries of any doubts that it had that may have adversely impacted their life insurance benefits.  *Id.*

55.   Defendants also owed Mr. Luna and Plaintiff a duty to hire, train and supervise their personnel to anticipate confusion over eligibility for Plan benefits and coverages.  "[B]ecause it is foreseeable if not inevitable that participants and



beneficiaries will have questions for plan representatives about their benefits, our cases also recognize an obligation on the part of plan fiduciaries to anticipate such inquiries and to select and train personnel accordingly." *Kenseth v. Dean Health Plan, Inc*., 610 F.3d 452, 471-72 (7th Cir. 2010).

56.     Defendants breached its fiduciary duties to Plaintiff and Mr. Luna by, among other things:

- Misleading Plaintiff and Mr. Luna by issuing a Benefits Summary to Mr. Luna that stated that he had $50,000 in supplemental life insurance coverage, while accepting his premium payments priced at that amount of coverage for months, including after his death, without advising him of the deficiency in his enrollment forms, including the fact that he needed to provide "evidence of insurability" and that Securian needed to approve it before the $50,000 in coverage for which he had applied became effective.

- Failing to notify Plaintiff and Mr. Luna that his application was incomplete despite Defendants knowing that Mr. Luna had selected supplemental life insurance and had not submitted any "evidence of insurability." (Alternatively, Securian should have known this and informed Plaintiff and Mr. Luna, but it did not, in breach of its fiduciary duties.)

- Failing to properly inform Plaintiff and Mr. Luna of what they believed to be discrepancies or deficiencies in Mr. Luna's application (or to adequately inform them of the Plan's requirements in that regard).

- Failing to effectively advise Mr. Luna, upon receiving his enrollment forms, to submit "evidence of insurability" that they required of him, because they were in a far better position than Mr. Luna to know that the application was incomplete.

- Failing to carefully review Mr. Luna's enrollment forms to ensure that they were complete (including having all necessary "evidence of insurability")



before profiting from his premiums that he paid for $50,000 in supplemental life insurance.

- Failing to anticipate that Plan participants like Mr. Luna would be confused by the ambiguous language in the Plan (including the group policy and corresponding personalized certificates) and enrollment forms as to what type of health information or additional forms were required of them, if any, in order to secure supplemental life insurance, and failing to have a more proactive procedure in place to ensure that Plan participants such as Mr. Luna would submit the "evidence of insurability" that Securian asserts was required.

- Including conflicting and confusing Plan language that was unclear and misleading and at a minimum created an ambiguity about whether a participant like Mr. Luna was eligible to enroll in supplemental life insurance coverage and was required to provide evidence of insurability and, if he was, in what form they would require such proof.  This was particularly true because the Plan's definition gave them discretion as to what type, if any, of "evidence of insurability" they would require, and because the Plan's language explicitly allowed Securian to waive the requirement for "evidence of insurability."

- Failing to anticipate that in light of the ambiguous Plan language that potentially allowed Securian to waive all "evidence of insurability" and that gave Securian discretion as to what type of "evidence of insurability" it would require, Mr. Luna and other Plan participants selecting supplemental life insurance on their enrollment forms would wait for Securian to advise them as to what, if any, "evidence of insurability" was required.

- Issuing the Benefit Summaries to Mr. Luna that misrepresented that he had $50,000 of supplemental life insurance coverage.



- Failing to set up a system to ensure that when they collected premiums, the plan benefits were properly administered and all conditions for eligibility were met.
- Other ways as alleged above in the Factual Background section of this Complaint.

57.    The Code of Federal Regulations establishes the minimum requirements for employee benefit plan procedures pertaining to claims for benefits that plan fiduciaries such as Defendants must follow.  That code, at 29 C.F.R. § 2560.503-1(b)(2), (5), requires a reasonable claim procedure to contain administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accord with plan documents.  It was enacted to implement ERISA's statutory declaration of policy, 29 U.S.C. Section 1001(a), that adequate disclosure be made and safeguards be provided with respect to the administration of ERISA plans because of the lack of knowledge on the part of ERISA plan participants and beneficiaries like Plaintiff.  Defendants' failure to construct a system to ensure that coverage is properly in place before accepting premium payments violated the requirement that safeguards be in place to ensure adequate administration of the Plan (i.e., the group policy that it funded and administered) and that benefit claim determinations are made in accordance with the Plan's documents.  This ERISA violation breached Defendants' fiduciary duties owed to Mr. Luna and Plaintiff as a Plan participant and beneficiary, respectively.

58.    Defendants misled Plaintiff and Mr. Luna by, among other things, providing him with the Benefit Summaries and accepting his premium payments on $50,000 of supplemental life benefits without dispute, only to later deny Plaintiff's claim for supplemental life benefits on the grounds that Mr. Luna did not qualify for the supplemental life benefits because he had not provided proof of good health. Plaintiff and Mr. Luna detrimentally relied on Defendants' misrepresentations in believing that Mr. Luna was fully covered and that his beneficiary, Plaintiff, upon

Case No.:



1  his passing, would receive the life insurance benefits that he had selected and paid

2  for, including supplemental insurance benefits.

3       59.    As explained by the court in *McCravy v. Metropolitan Life Insurance*

4  *Co.*, 690 F.3d 176, 182-83 (4th Cir. 2012), a case with very similar facts:

5       In sum, with [*CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 179 L. Ed. 2d
       843 (2011)], the Supreme Court clarified that remedies beyond mere
6       premium refunds--including the surcharge and equitable estoppel
       remedies at issue here--are indeed available to ERISA plaintiffs suing
7       fiduciaries under Section 1132(a)(3). This makes sense--otherwise, the
       stifled state of the law interpreting *Section 1132(a)(3)* would encourage
8       abuse by fiduciaries. Indeed, fiduciaries would have every incentive to
       wrongfully accept premiums, even if they had no idea as to whether
9       coverage existed--or even if they affirmatively knew that it did not. The
       biggest risk fiduciaries would face would be the return of their ill-
10      gotten gains, and even this risk would only materialize in the (likely
       small) subset of circumstances where plan participants actually needed
11      the benefits for which they had paid. Meanwhile, fiduciaries would
       enjoy essentially risk-free windfall profits from employees who paid
12      premiums on non-existent benefits but who never filed a claim for
       those benefits. With *Amara,* the Supreme Court has put these perverse
13      incentives to rest and paved the way for McCravy to seek a remedy
       beyond a mere premium refund.

14

15  Thus, ERISA plan participants and beneficiaries can assert a claim against

16  fiduciaries like Defendants for breach of fiduciary duty under 29 U.S.C. Section

17  1132(a)(3), and the available remedies to redress those breaches and ERISA

18  violations include equitable remedies like surcharge and estoppel, among others like

19  waiver and reformation.  *Id.* at 180 ("But with *Amara*, a striking development, the

20  Supreme Court expanded the relief and remedies available to plaintiffs asserting

21  breach of fiduciary duty under Section 1132(a)(3) and therefore seeking make-

22  whole relief such as equitable relief in the form of surcharge.").  (Internal brackets

23  and quotes removed.)

24       60.    Defendants' breach of its fiduciary duties and other ERISA violations

25  described above proximately caused the denial of Plaintiff's benefits of $50,000,

26  and Plaintiff is therefore entitled to compensatory damages and/or supplemental life

27  insurance benefits in the amount of $50,000 under the equitable remedies of waiver,

28  reformation, estoppel and surcharge, among others.



61.     As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

*Waiver Remedy*

62.     Defendants waived their right under the Plan to require and approve "evidence of insurability" before Mr. Luna's supplemental life insurance benefits became effective.  Waiver is the intentional relinquishment of a known right. *Gaines*, *supra*, 329 F.Supp.2d at 1222.  Based on the facts alleged above, Defendants intentionally, knowingly and voluntarily relinquished their right under the Plan to require Mr. Luna to submit "evidence of insurability," a medical history statement or any other evidence of his health before Securian would bind coverage in the amount of $50,000.[2]

63.     Among other things, Defendants knew of their own Plan requirements, knew that Mr. Luna had not submitted "evidence of insurability" while enrolling for supplemental life coverage, knew of the coverage being purchased by Mr. Luna in the amount of $50,000 and knew that he was paying premiums for that level of coverage.  Yet it admittedly received and accepted premium payments for that level of coverage without giving any indication that Mr. Luna had failed to comply with a precondition to obtaining insurance coverage: submitting "evidence of insurability" or any type of proof of good health.

64.     In short, Defendants knowingly took Mr. Luna's premium amounts for months without requiring evidence of his health, all the while knowing that Mr. Luna erroneously thought that he had fulfilled all Plan requirements to secure $50,000 in coverage.  Securian then tried to enforce the Plan's "evidence of

---

[2] Plaintiff pleads waiver of this purported Plan requirement in the alternative to her claim seeking Plan benefits and pleads that there is no such requirement because the Plan's language is ambiguous and thus must be strictly interpreted against Securian as the drafter and in accord with the insured's reasonable expectations of coverage. As alleged above, under the circumstances of this case, Mr. Luna reasonably expected no Plan requirement that he submit "evidence of insurability" in order to secure coverage in the amount of $50,000.



insurability" requirement only when that would be to its financial benefit, that is, after Mr. Luna passed away and Plaintiff submitted a claim for the $50,000.  That conduct constitutes a voluntary relinquishment of the right to require submission of a personal medical history statement or any other "evidence of insurability."

65.     Giving effect to the waiver in this case does not expand the scope of the ERISA Plan.  Rather, it provides Plaintiff with an available benefit for which Mr. Luna paid.  An insurer and employer cannot knowingly take multiple premiums, assure a plan participant that they are covered and then refuse to pay the benefit when a claim is made and benefits under the Policy/Plan are due.  *See Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459 (6th Cir. 2022); *Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968 (8th Cir. 2022); *McCravy, supra*, 690 F.3d at 182;  *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351 (5th Cir. 1991); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934 (9th Cir. 2017); *Sullivan-Mestecky v. Verizon Communications, Inc.*, 961 F.3d 91 (2d Cir. 2020).  That is precisely what Defendants did.  Plaintiff now seeks the benefits that she is entitled to under the Policy.

*Reformation Remedy*

66.     Because of Defendants' mistake and/or fraud, the Plan including the group policy must be reformed such that it does not and did not require Mr. Luna to submit "evidence of insurability" to Defendants in order for Mr. Luna to obtain and bind supplemental life insurance coverage with Securian in an amount of $50,000.

67.     Reformation of a contract under a fraud theory requires a showing that (1) one party seeks reformation, (2) this party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract and (3) the party seeking reformation was justified in relying on the other party's misrepresentations. *Moyle*, *supra*, 2016 WL 2946271, at *12 (citing *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012)).  Plaintiff seeks reformation.



68.     Mr. Luna's assent to pay Securian premiums for supplemental Plan benefits was induced by Defendants' misrepresentations as to the terms or effect of the Plan. Among other things, Securian materially misrepresented facts to Mr. Luna by issuing and providing Mr. Luna with the Benefit Summary that indicated that he had supplemental life insurance with Securian for $50,000. That was an untrue and misleading statement. Securian asserts that the Plan language explicitly required Mr. Luna to submit "evidence of insurability" and for Securian to approve it before supplemental life coverage became effective.[3]

69.     Defendants did not request "evidence of insurability" when they misrepresented to Mr. Luna that his life was insured for $50,000. Instead, Defendants accepted Mr. Luna's premiums for over eight months for $50,000 in supplemental life insurance coverage without ever asking for "evidence of insurability." This conduct, coupled with Securian's misrepresentation by issuing the Benefit Summaries that indicated $50,000 in supplemental life coverage, materially misled Mr. Luna into believing that he had secured $50,000 in coverage and need not provide Securian with "evidence of insurability" or take any further action to bind the $50,000 in benefits that he thought he had secured.

70.     Plaintiff and Mr. Luna would not have agreed to become party to the supplemental life insurance offered by Securian, nor would Mr. Luna have paid premiums to Securian, had he known the true facts. Had he known that Securian did not issue him $50,000 in supplemental life insurance, he would have attempted to procure other supplemental life insurance coverage apart from the Plan in that amount or more. He did not merely want the minimal amount of life insurance ($10,000) but rather always intended to obtain far more of a benefit than that. Mr.

---

[3] Again, Plaintiff alleges these facts and this claim in the alternative to her First Claim. Plaintiff alternatively contends that there was no such Plan requirement, given the Plan's ambiguous language, before Mr. Luna secured $50,000 in life insurance and that he complied with all Plan provisions.

Case No.:



Luna's assent to enter into the contract with Securian was induced by Defendants' false representations that it had issued Mr. Luna $50,000 in supplemental coverage.

71.    When Mr. Luna enrolled in the Plan and selected supplemental life insurance in the amount of $50,000, Defendants should have told him that he needed to submit "evidence of insurability" and that because he had not done so, he was not insured for the extra $50,000 benefit that he had requested.  Securian did not tell him this, but instead materially misrepresented to Mr. Luna that he had secured $50,000 in supplemental life insurance, by its issuing Benefit Summaries and taking his premiums.  Had Securian been forthright, Mr. Luna would have immediately provided "evidence of insurability" and obtained Securian's approval to the $50,000 benefit.  Mr. Luna would not have decided to pay premiums for a $50,000 benefit when he was in fact not receiving that benefit.  Alternatively, he would have sought and purchased an individual life insurance contract for at least $50,000 with an insurer other than Securian.

72.    Defendants knew that Mr. Luna had not submitted "evidence of insurability" and that this was required by the Plan to secure $50,000 in supplemental coverage, but it intentionally misled him while hoping that he would never make a claim, so that Securian could keep his premiums.  Securian planned that it would deny any claim made by Plaintiff because Mr. Luna had not submitted the required "evidence of insurability."  Securian's calculated behavior was geared to ensuring its financial benefit whether or not a claim was filed.

73.    Plaintiff and Mr. Luna detrimentally relied upon the misleading information that Defendants provided them, including the Benefit Summaries that indicated that Mr. Luna had secured supplemental life coverage for $50,000, and they were justified in doing so.  For months, MV Transportation had deducted premiums from Mr. Luna's paychecks for the $50,000 benefit, which Securian in turn accepted without dispute and without informing Mr. Luna that he needed to complete additional health forms to secure coverage.  MV Transportation deducted



the premiums after Mr. Luna had repeatedly communicated to it and Securian that he wanted $50,000 in extra coverage.  Mr. Luna's belief that he had been approved for the $50,000 coverage was also reasonable, because of multiple factors: (1) the ambiguous language in the Plan and enrollment forms about when and what type of "evidence of insurability" was required (if any); (2) whether the requirement was waived; (3) the fact that Mr. Luna and Plaintiff were not even given the Plan documents when Mr. Luna enrolled in 2020; and (4) the Plan language being amended without any notice to Mr. Luna in August 2020.  Moreover, Defendants were by far the more sophisticated parties to the Plan, being Plaintiff's and Mr. Luna's fiduciaries.  They justifiably assumed that if they needed to submit information about Mr. Luna's health to bind coverage, their fiduciaries would tell them as much and provide them with the necessary forms before accepting the premiums or sending them a significant legal document that represented to them that they had secured $50,000 in life insurance.

*Equitable Estoppel Remedy*

74.     Defendants are estopped from enforcing any purported right under the Plan to demand and approve "evidence of insurability" before Mr. Luna's supplemental life insurance benefit of $50,000 became effective, or from contesting coverage in the amount of $50,000 based on the Plan's "evidence of insurability" requirements or due to Mr. Luna having failed to provide evidence of good health.

75.     By issuing and providing Mr. Luna in November 2021 with the Benefit Summary that indicated supplemental life insurance for $50,000, Defendants materially misrepresented to him that he had secured life insurance coverage with Securian in that amount, despite his never having submitted "evidence of insurability" or any other evidence of good health.  That was an untrue and misleading representation.  If the Plan language ambiguously required participants like Mr. Luna to submit "evidence of insurability" in order to receive supplemental

1   life insurance coverage in the amount of $50,000, and required Securian to approve

2   it before coverage became effective, Plaintiff was unaware of this.

3       76.    Securian issued the Benefit Summaries that indicated supplemental life

4   insurance of $50,000 and informed Mr. Luna that it was collecting premiums from

5   him for that $50,000 in insurance.  In effect, with Securian's knowing acceptance of

6   MV Transportation's premium deductions from Mr. Luna's paychecks, Securian's

7   indication to Mr. Luna that he was paying premiums for $50,000 in coverage was

8   another material misrepresentation (that Mr. Luna had bound coverage in the

9   amount of $50,000 and did not need to take any further action by submitting

10  "evidence of insurability").

11      77.    Defendants knew that if the Plan required Mr. Luna to submit

12  "evidence of insurability" and if Securian had to approve it in order for his

13  supplemental life insurance coverage to become effective, Plaintiff and Mr. Luna

14  were ignorant of those facts.  Defendants knew that Mr. Luna had not submitted

15  "evidence of insurability" but that he was paying premiums for coverage of $50,000

16  in benefits yet they did nothing to make him aware of this.

17      78.    As explained above, the "evidence of insurability" provisions of the

18  Plan are ambiguous, including the actual "evidence of insurability" requirement,

19  definition and related waiver provisions, such that reasonable persons could disagree

20  as to their meaning or effect.  Mr. Luna and Plaintiff relied, to their detriment, on

21  representations made by Defendants to them with regard to ambiguous language in

22  the benefit Plan.

23      79.    Plaintiff and Mr. Luna reasonably but detrimentally relied upon

24  Securian's misrepresentations that he had secured $50,000 in supplemental life

25  insurance without having submitted "evidence of insurability."  Plaintiff and Mr.

26  Luna's reliance on Securian's misrepresentations was reasonable, particularly given

27  the ambiguous Plan language convoluted even further by Defendants' conduct, the

28

Case No.:



conflicting and confusing language in MV Transportation's enrollment forms, and Defendants' acceptance of Mr. Luna's premium payments.

80.     Securian intended for Mr. Luna to act on its misrepresentations and conduct.  Based upon its conduct, Mr. Luna had a right to believe that Securian so intended.  Securian wanted and required Mr. Luna to pay the premium amount for $50,000 in supplemental coverage without him submitting evidence of insurability.  That way, Securian could collect premiums without risk of having to satisfy a $50,000 claim.  Securian hoped that a claim would never be made so that the issue would not be discovered so it could retain and profit from the premiums, but it knew that if a claim was submitted, it would deny the claim on the ground that Mr. Luna had not submitted "evidence of insurability."  Securian counted on the fact that it could charge Mr. Luna for supplemental life insurance coverage and keep the premiums if no claim was made, but could challenge any claim, all the while keeping the premiums that Luna paid for the coverage.  Thus, Securian misrepresented to Mr. Luna that he had $50,000 in supplemental life insurance so that he would pay the premiums, but it neglected to alert him that he had not yet been approved because he had failed to submit the required "evidence of insurability," in order to avoid having to pay a $50,000 claim if he died.

81.     In cases with similar facts, courts have applied waiver and estoppel where the employer or insurer accepted premium payments with the knowledge that the insured did not meet the requirements for coverage or where they should have known but carelessly did not.  *See Salyers*, *supra*, 871 F.3d at 938 (finding waiver and estoppel by insurer where employer accepted higher premium payments for higher coverage not permitted by policy, which knowledge was imputed to the insurer, but insurer later denied higher death benefit); *John Hancock Mut. Life Ins. Co. of Bos., Mass. v. Dorman*, 108 F.2d 220, 224 (9th Cir. 1939) (finding insurer estopped from enforcing group life policy's insurability provision – that coverage terminates when person ceases to be an employee – where insurer's agent, the



employer, determined that its director who was not an employee could apply and accepted his premiums for a year); *Pitts*, *supra*, 931 F.2d at 357 (finding waiver in ERISA action where insurer continued accepting premium payments after learning of plan participant's breach of policy requirements); *McCravy*, *supra*, 690 F.3d at 182 (estoppel permissible where insurer accepted premiums for dependent life insurance that no longer existed under policy when participant's daughter turned 19).  Under agency theory, a principal cannot argue ignorance of a lack of coverage where its agent had such knowledge.

82.     Moreover, there exist (1) extraordinary circumstances and (2) "the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect . . . ."  *Spink v. Lockheed Corp.,* 125 F.3d 1257, 1262 (9th Cir.1997).  Courts have held that making "a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part," is an extraordinary circumstance (*Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 86 (2d Cir.2001)), as well as "conduct suggesting that [the employer] sought to profit at the expense of its employees," a "showing of repeated misrepresentations over time," or evidence "that plaintiffs are particularly vulnerable."  *Kurz v. Phila. Elec. Co.,* 96 F.3d 1544, 1553 (3d Cir.1996).

83.     Plaintiff was injured by Defendants' misrepresentations and by Plaintiff's and Mr. Luna's reasonable reliance thereon.  Plaintiff and Mr. Luna would have obtained $50,000 of supplemental life insurance elsewhere had Securian been accurate and forthright about what the Plan requires and that Mr. Luna had not yet been approved for $50,000 because he had failed to submit "evidence of insurability."

*Surcharge Remedy*

84.     Plaintiff is entitled to the equitable remedy of surcharge, i.e., to be made whole after Securian breached its fiduciary duties to Plaintiff and Mr. Luna.

Case No.:



This includes compensatory damages for actual harm caused by Defendants' breach of fiduciary duties. *See Skinner*, *supra*, 673 F.3d at 1167.

85.     As to compensatory damages, "The beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the [fiduciary's] breach." *Id.* Plaintiff and Mr. Luna would have secured $50,000 in supplemental life insurance coverage, with either Securian or another insurer, but for Defendants' breaches of their fiduciary duties in, among other things, failing to properly notify Mr. Luna of its "evidence of insurability" requirements. Mr. Luna would have secured at least an extra $50,000 life insurance benefit and Plaintiff would have been the beneficiary thereof when Mr. Luna died, had Defendants not breached their fiduciary duties. As a proximate result of those breaches, Plaintiff has been actually harmed in the amount of $50,000 and is entitled to collect that amount from Securian in order to be made whole.

86.     As to unjust enrichment, "a fiduciary who gains a benefit by breaching his or her duty must return that benefit to the beneficiary." *Id.* Securian gained the benefit of retaining Mr. Luna's premium payments for a supplemental life insurance benefit of $50,000 because it breached its fiduciary duties, as alleged hereinabove. It also became unjustly enriched by profiting off those wrongly held premiums. Securian must return those premium payments (but has not done so, despite having conceded that the premiums should be returned), as well as any wrongly obtained profits.

87.     Plaintiff alleges the same conduct against Defendants Does 1 through 10 as she does against Defendants in this Second Claim for Relief and in this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court grant the following relief against all Defendants:

Case No.: 



1.   For all Plan benefits due and owing Plaintiff, including the unpaid supplemental life insurance benefit of $50,000.

2.   Alternatively, for equitable relief, including waiver, reformation, equitable estoppel and surcharge.

3.   For costs and reasonable attorneys' fees, pursuant to 29 U.S.C. Section 1132(g).

4.   For pre-judgment and post-judgment interest on the principal sum, accruing from the date on which the obligations were incurred. *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992).

5.   For such other and future relief as this Court deems just and proper.

Dated:  November 10, 2022                 **McKENNON LAW GROUP PC**

By:  _____
ROBERT J. McKENNON
JOSEPH S. HOFF
CORY T. SALISBURY
Attorneys for Plaintiff, Isabella Luna

Case No.: